IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michell Godoy Ruiz,<br><br>   Petitioner,<br><br>v.<br><br>Kristi Noem, et al.,<br><br>   Respondents. | No. CV-25-04561-PHX-DJH (CDB)<br><br>**ORDER** |

Petitioner filed this action under § 2241 challenging her immigration detention. (Doc. 1.) Petitioner alleged she was released from immigration detention in March 2024 on an Order of Release on Recognizance. (*Id.* ¶ 26.) Petitioner further alleged that despite complying with all conditions of her release, she was rearrested and detained on November 17, 2025 without notice or an opportunity to respond. (*Id.* ¶ 29.) The Court directed Respondents to answer the Petition and thereafter ordered supplemental briefing. (Docs. 4, 7.) Upon review of the briefing, the Court will grant the Petition and direct Petitioner's immediate release from custody.

**I. Background**

Petitioner entered the United States without inspection and was first encountered by immigration officials on March 17, 2024. (Doc. 6, Ex. A ¶ 5, Decl. of Shadd Hoffman, Deportation Officer, Enforcement and Removal Operations.) Petitioner was placed in removal proceedings and released from immigration custody the next day under ICE's Alternatives to Detention ("ATD") program. (*Id.* ¶ 7.) In their response, Respondents

contend "Petitioner's [unlawful detention] claim must fail because there was a change in circumstances: her violation of the conditions of her release." (Doc. 6 at 3.)  In support, Officer Hoffman stated:

> 8. On November 17, 2025, the United States Immigration Customs Enforcement (USICE) arrested the Petitioner in Phoenix, Arizona.
>
> 9. ICE determined the Petitioner had multiple violations while on the ATD/ISAP program and that she was to be sent back to ICE detention.

(Doc. 6, Ex. A ¶¶ 8-9.)  The Court ordered Respondents to submit a supplemental response providing *specific information and evidence* supporting their averment that Petitioner violated the conditions of her release. (Doc. 7.) (emphasis added).  Respondents submitted a supplemental declaration from Deporatation Officer Jayson McElhaney indicating "Petitioner had 19 violations between July 26, 2024, and November 13, 2025, while on ATD; including 3 missed office visits, 2 failed home visits, and 13 failed biometrics check-ins." (Doc. 8-1 ¶ 6.)

## II.     Discussion

Respondents maintain Petitioner's release under ATD was cancelled on November 17, 2025, due to her noncompliance with the program's rules and requirements.  According to Respondents, under 8 U.S.C. § 1226(b), an alien may have their release revoked "at any time" and may accordingly be detained.  (Doc. 6 at 2.)  Respondents further argue neither the statute nor the regulations entitle an alien to any procedure if their parole is revoked, nor do they place any restrictions on the circumstances in which immigration authorities may revoke it.  *See id.*; 8 C.F.R. § 236.1(c)(9) (allowing revocation of parole "in the discretion" of various immigration officials).

But in their response, Respondents do not address Petitioner's constitutional claim - whether Petitioner's release on parole in March 2024 created a liberty interest in her release.  This is a significant omission. Recent cases confirm an immigration detainee released on parole retains a liberty interest in her release and that "liberty interest [does] not expire along with his parole." *Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB,

2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . . That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his § 1182 parole); *Quiroga-Chaparro v. Warden of the Golden State Annex Detention Fac.*, No. 25-cv-01731-AC, 2025 WL 3771473, at *4–5 (E.D. Cal. Dec. 31, 2025) (same); *Ramirez v. Wamsley*, No. 2:25-cv-01723-KKE-TLF, 2025 WL 3288295 (W.D. Wash. Nov. 25, 2025)  (directing immigration detainee's immediate release after he was redetained following his parole's expiration, stating petitioner's "interest in his freedom is constitutionally protected" and that "the Government exercises discretion in determining whether to grant parole or extend it upon its expiration does not eliminate the protections afforded to Petitioner's liberty interest.")  While Respondents allege there was a change in circumstances—violation of the conditions of her release— the declaration in support of that proposition does not provide a single detail about the alleged violations of Petitioner's release conditions, how they were material, and why they justified her redetention.  This vague argument is insufficient to establish that Petitioner's redetention was appropriate.

Respondents also do not address the three-pronged test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  *Mathews* explains "[t]he fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether procedural protections satisfy the Due Process Clause, courts consider three factors: (1) "the private interest that will be affected by the official action";

(2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

As for the first factor, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

For the second factor, Respondents argue now that Petitioner's redetention was justified by the violation of her release conditions. But Respondents offer no information about the circumstances surrounding the violations, and Petitioner's declaration that she completed all visits and at most took her weekly biometric pictures a few minutes late (Doc. 10-1, Petitioner Decl.). So, the Court concludes there is a risk of erroneous deprivation if unspecified violations can justify the redetention of individuals without a neutral decisionmaker evaluating whether redetention is warranted.

Finally, as for the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). In addition, here, Respondents' interest is even lower because Petitioner was previously released after immigration officials determined she was not a flight risk or danger to the community, and there is no indication Petitioner's alleged violations of her release are anything more than technical. *See Pinchi v. Noem*, No. 25cv05632-RMI, 2025 WL 1853763, at *2 (N.D. Cal. July 4, 2025).

The Court therefore finds that the *Mathews* factors weigh in favor of determining Petitioner was entitled to a hearing evaluating the alleged violations of her release before she was redetained. See *J.E.H.G. v. Chesnut*, 1:25-CV-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."). "The only potential injury the government faces is a short delay in detaining [Petitioner] if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that [the] detention is necessary to prevent danger to the community or flight." *Pinchi*, 792 F. Supp. 3d at 1037-38. For all these reasons, the Petition will be granted, and Petitioner will be ordered released from custody immediately.

**IT IS THEREFORE ORDERED** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to her due process claim in Count Two. The remainder of the Petition is denied as moot.

**IT IS FURTHER ORDERED** Respondents must **immediately release** Petitioner from custody under the same conditions that existed before her redetention.

**IT IS FURTHER ORDERED** Respondents must provide a notice of compliance within two business days of Petitioner's release.

**IT IS FINALLY ORDERED** any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 27th day of February, 2026.

Honorable Diane J. Humetewa
United States District Judge